IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER R. SCOTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18-CV-01815-S |
| | § | |
| MIMEDX GROUP, INC. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND MOTION TO SUPPRESS AUDIO RECORDINGS**

Respectfully submitted,

/s/ JASON C.N. SMITH
JASON C.N. SMITH
State Bar No. 00784999

LAW OFFICES OF JASON SMITH
600 Eighth Avenue
Fort Worth, Texas 76104
(817) 334-0880, telephone
(817) 334-0898, facsimile
Email: jasons@letsgotocourt.com

ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................i

TABLE OF AUTHORITIES...........................................................................................ii

I.     BACKGROUND AND FACTS.........................................................................1

II.    LEGAL STANDARDS .....................................................................................4

   A.    Florida Security of Communications Statute..........................................4

   B.    Federal Rule of Civil Procedure 26(c)...................................................6

III.   LEGAL ARGUMENT .......................................................................................7

   A.    Recordings Are Legal .............................................................................7

   B.    Florida Evidentiary Rules Do Not Apply ..............................................9

   C.    Protective Order is Inappropriate .........................................................11

      1.   Relevance.....................................................................................12

      2.   Prejudice .....................................................................................16

V.     CONCLUSION ................................................................................................16

CERTIFICATE OF SERVICE.....................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*Alviar v. Macy's Inc.*, __ Fed Appx. __ , 2019 WL 3849310 (5th Cir. 2019)................................13

*Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400 5th Cir. 2001) ...........................................15

*Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) ................................................................10

*Boyd v. State*, 17 So.3d 812 (Fla. 4th DCA 2009)........................................................................9

*Brown v. CSC Logic, Inc.*, 82 F.3d 651(5th Cir. 1996) .........................................................14, 15

*E.E.O.C. v. BDO USA, L.L.P.*, 856 F.3d 356 (5th Cir. 2017) .........................................................6

*Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970)..............................................................10

*Goudeau v. National Oilwell Varco, L.P.,* 793 F.3d 470 (5th Cir. 2015) ......................................13

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014) .........................................................13

*In re Terra Int'l,* 134 F.3d 302 (5th Cir. 1998)...........................................................................6

*Krystek v. University of Southern Mississippi*, 164 F.3d 251 (5th Cir. 1999)....................12, 13, 14

*McDonough v. Fernandez-Rundle*, 862 F.3d 1314 (11th Cir. 2017)................................................5

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ................13

*Mobley v. State*, 409 So.2d 1031 (Fla. 1982) ..............................................................................9

*Monarch Ins. Co. of Ohio v. Spach*, 281 F.2d 401 (5th Cir. 1960) ..............................................10

*Mozo v. State*, 632 So.2d 623 (Fla. 4th DCA 1994).....................................................................7

*Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333 (5th Cir. 2002) ..................................15

*Proffitt v. State*, 315 So.2d 461 (Fla. 1975) ...............................................................................9

*Rachid v. Jack-In-The-Box, Inc.*, 376 F.3d. 305 (5th Cir. 2004).................................................13

*Landry v. Air Line Pilots Ass'n*, 901 F.2d 404 (5th Cir. 1990)......................................................6

*Shapiro v. State*, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982 (1981) ...........................5

*State v. Inciarrano*, 473 So.2d 1272 (Fla. 1985) ...........................................................5

*State v. Rabb*,  920 So.2d 1175 (Fla. 4th DCA 2006) ..................................................6, 8

*United States v. Pace*, 10 F.3d 1106 (5th Cir. 1993), ...................................................16

*Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296 (5th Cir. 2000) ................................15

**STATUTES**

Civil Rights Act of 1964, § 706 ......................................................................................1

18 U.S.C. § 1514A et. seq. ..............................................................................................1

42 U.S.C. § 2000e............................................................................................................1

Fed. R. Civ. P. 26(b)(1) ............................................................................................13, 14

Fed. R. Civ. P. 26(c)(1) ...............................................................................6, 7, 11, 12, 14

Fed. R. Civ. P. 43(a) ......................................................................................................10

Fed. R. Evid. 401 ...........................................................................................................16

Fed. R. Evid. 403 ...........................................................................................................16

Fla. Sta. § 934.03 .............................................................................................................4

Fla. Stat. § 934.02 ........................................................................................................4, 5

Fla. Stat. § 934.02(8) .....................................................................................................10

Fla. Stat. § 934.06.........................................................................................................6, 9

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER R. SCOTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18-CV-01815-S |
| | § | |
| MIMEDX GROUP, INC. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION
FOR PROTECTIVE ORDER AND MOTION TO SUPPRESS AUDIO RECORDINGS**

TO THE HONORABLE KAREN GREN SCHOLER,
UNITED STATES DISTRICT JUDGE:

COMES NOW, the Plaintiff, Jennifer R. Scott, and respectfully submits this opposition to Defendant MiMedx Group, Inc.'s motion for protective order and motion to suppress audio recordings (ECF No. 28). For the reasons set forth below, Defendant's motion is without basis in law and in fact, and therefore, must be denied.

## I.    BACKGROUND AND FACTS

Plaintiff filed this action on July 13, 2018 alleging sex discrimination under Section 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as well as under 18 U.S.C. § 1514A et. seq. (Sarbanes Oxley). Plaintiff avers that Defendant discriminated against her and terminated her employment because of her sex. Furthermore, Plaintiff alleges that Defendant terminated her employment because she lawfully reported actions that resulted in the misreporting of Defendant's revenue to her supervisor.

In January of 2017, Defendant held its national sales meeting at the Ritz Carlton hotel in Orlando, Florida. (App. 4). During a period of free time on the afternoon of January 30, 2017,

senior vice president of sales for Defendant, Kevin Lilly ("Lilly"), hosted a gathering in his hotel room with several male members of the sales team, including Ricky Palmer, Joe Panther, Lane Clark, and Frank Braly. (App. 14-16). The men discussed, among other things, certain female employees of Defendant -- including Plaintiff, then an ex-employee -- in sexist terms. (App. 4-5, 14-21).

Two other employees of Defendant -- Amy Powers and Susan Schardt -- were staying in the adjacent room and could clearly hear the contents of the loud conversation from their balcony, which was occurring in Lilly's hotel room and on his balcony. (App. 14-21). At a certain point, Ms. Powers and Ms. Schardt were so shocked by what they were hearing, that they began to record the conversation on their telephones, evidencing the uncouth behavior of their male colleagues. (App. 16-28, 49, 50).

Among the comments that were either recorded or written down by Ms. Powers and Ms. Schardt were: (1) Lilly commenting on Plaintiff: "If there's one person who could fuck up a wet dream, it's her"; (2) Lilly bragging about the role he played in getting Plaintiff fired; and (3) Lilly celebrating Plaintiff's termination by stating:

> Thank god, ding dong the wicked witch is dead. I had every part of that. Come here, I had every part of that and just so you know, I was sitting around, it was Carlton and Longo were in the room with Nick and I. So I was in a meeting we were doing all this transitioning shit, end I am sitting here going, for me the number one hated woman in this company is her.

(App. 1-29, 49, 50).

Powers testified recording the sexist comments she heard Lilly say.[1] (App. 1-29). When asked about the loud conversation in which he made repeated sexist comments about Robyn Scott, Lilly repeatedly testified that he did not remember what he said. (App. 30-48).

Defendant now moves for a protective order pursuant to Federal Rule of Civil Procedure 26, seeking to prohibit Plaintiff from offering the audio recordings and any evidence derived therefrom into evidence, on the basis that "[t]o allow Plaintiff to use or refer to irrelevant and illegally obtained recordings would be an []abuse of discovery." (ECF No. 28 at 7).

Specifically, Defendant avers that the recordings were illegally obtained under Florida law and therefore must be "suppressed"[2] pursuant to a Florida statute. Further, Defendant moves for relief pursuant to Federal Rule of Civil Procedure 26 on the grounds that the recordings are irrelevant to this action and prejudicial to Defendant.

While the recordings may be prejudicial to the substance of Defendant's case, they are so in a wholly relevant manner. Specifically, this case stems from Defendant's discrimination against and wrongful discharge of Plaintiff; recordings of Defendant's executive, after the fact, boasting about Plaintiff's termination and the basis therefore, is highly relevant to the issue of whether Plaintiff's sex was a motivating factor in her termination by Defendant and whether Lilly was involved in her termination.

Additionally, the recordings were obtained legally, as Lilly and his guests did not have a reasonable expectation of privacy in a hotel suite where their conversations carried easily across

---

[1] The recording of Lilly's comments merely confirms Powers' testimony regarding the sexist comments she heard Lilly make about Plaintiff and other women. (App. 4-28, 49). Certainly Powers can testify regarding the sexist things she heard Kevin Lilly say about Plaintiff and Plaintiff's termination regarding of whether such were recorded.
[2] While Defendant uses the term "suppress" to describe the relief sought, "suppression" is not available in a civil case in federal court. Rather, "suppression" is a term employed in criminal matters, while a more appropriate phrasing would be a motion in limine, or, alternatively, simply requesting the protective order. Nonetheless, beyond the semantic deficiencies of this request, as outlined below, the substance of the request is equally lacking in merit and jurisdiction.

the closely-spaced balconies and through the hotel walls and open doors into adjacent rooms, balconies and public spaces. And even if there were potential issues with the legality of the recordings under Florida law, Defendant was not a party to the intercepted conversations and lacks standing to challenge their legality. Furthermore, the Federal Rules of Evidence govern this matter with regard to the admissibility of evidence, not Florida statutes. Under Federal Rules of Evidence, Lilly's sexist comments are relevant to Plaintiff's sex discrimination claim and are not stray remarks.

Thus, for the reasons set forth herein, the Court must deny Defendant's motion as being legally and factually without merit.

## II.   LEGAL STANDARDS

### A.   Florida Security of Communications Statute

The Florida Security of Communications Act makes it a crime to intentionally intercept a person's wire, oral, or electronic communication, without prior consent of all parties to the communication. Fla. Sta. § 934.03. The Section, titled "Interception and disclosure of wire, oral, or electronic communications prohibited," provides:

1) Except as otherwise specifically provided in this chapter, any person who:

a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication; . . .

c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; . . . shall be punished as provided in subsection (4).

Fla. Stat. § 934.03. Section 934.02 in turn defines "oral communication" as

any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such

expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication.

Fla. Stat. § 934.02.

Section 934.02 does not apply to the recording of all oral communications. It is expressly limited to communications "uttered by a person *exhibiting* an expectation that such communication is not subject to interception." Fla. Stat. § 934.02 (emphasis supplied).

> "Exhibit" means "to show externally," "to display" and "to demonstrate." See WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (3rd ed. 1994) (defining the word "exhibit"). The Florida Legislature's choice of this verb is telling: it required that the expectations of privacy needed to trigger application of the statute must be exhibited; in other words they must be "shown externally" or "demonstrated." The Legislature did not want expectations of privacy to count that remained unexpressed. Consequently, the Legislature imposed a simple requirement that the expectation be "exhibited".

*McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1319 (11th Cir. 2017).

In addition to the fact that an expectation of privacy must be exhibited, the statute also requires that the "circumstances" must "justify [an] expectation" of privacy. Fla. Stat. § 934.02. The Florida Supreme Court has interpreted § 934.02 to require "a reasonable expectation of privacy," which includes "one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable." *State v. Inciarrano*, 473 So.2d 1272, 1275 (Fla. 1985) (citing *Shapiro v. State*, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 (1981)). Thus, in *Inciarrano*, a criminal defendant who murdered a victim in an office meeting moved to suppress a recording that the victim made of the meeting. The Florida Supreme Court held that even though the defendant had a subjective expectation of privacy, there was no reasonable objective expectation of privacy because the meeting took place in an office, which the court noted as having a "quasi-public nature." *Inciarrano*, 473 So.2d at 1274.

> The Florida Supreme Court:
> view[s] the reasonable expectation of privacy afforded to locations along a hierarchy from public to private. An airport and a highway are unquestionably

5

> public places with little or no privacy, as much as a home is undoubtedly a private place characterized by its very privacy. A hotel room lies somewhere in between, because although it possesses some of the aspects of a home, it also possesses some of the aspects of the itinerant life present in airports and on highways.

*State v. Rabb*, 920 So.2d 1175, 1186-87 (Fla. 4th DCA 2006) (emphasis supplied).

Section 934.06 of the Florida Security of Communications Act provides:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter.

### B.      Federal Rule of Civil Procedure 26(c)

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. See Fed. R. Civ. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citations omitted); *see also E.E.O.C. v. BDO USA, L.L.P.*, 856 F.3d 356 (5th Cir. 2017). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990).

Rule 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding

inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." Fed. R. Civ. P.  26(c)(1).

## III.    LEGAL ARGUMENT

### A.    <u>Recordings Are Legal</u>

Defendant's argument that the recordings violate Florida state law are unfounded. First, as a threshold matter, Defendant is without standing to challenge the legality of the recordings. In order to have standing to challenge the interception of a conversation, a party must have been a party to the conversation, or one whose premises served as the site of the surveillance. *Mozo v. State*, 632 So.2d 623, 625–626 (Fla. 4th DCA 1994). Defendant does not allege to be either of these. The interception at issue took place in the Ritz Carlton hotel and concerned conversations among several private individuals; thus, Defendant, a corporation not party to the conversations at issue lacks standing to challenge the legality of these recordings.

Second, to say there is a reasonable expectation of privacy to loudly speak in a hotel room and on a balcony with shared walls and surrounded on all sides by public space is an extreme interpretation of the law. Notably, the law limits the expectation of privacy by reasonableness, a threshold standard that cannot be met under these circumstances.

The facts are clear that (1) Lilly and the others were drunkenly and loudly speaking in a hotel suite and on the balcony (*see* Exhibit A (Powers Deposition Transcript) at 35-44); (2) Ms. Powers and Ms. Schardt simply occupied a room adjacent to that suite (*id.*); (3) Ms. Powers and

Ms. Schardt could clearly overhear the conversations occurring in the suite through the shared wall and open balcony door and through the open air of the closely-connected balcony of the suites (*id.*); and (4) Ms. Powers and Ms. Schardt did not take any measures -- either physically or technologically -- to enhance their ability to hear the conversations (*id.*).

In these circumstances, Lilly and the others cannot reasonably be expect that their conversations are private and that their voices will not carry into the adjoining private hotel rooms and public space. Lilly and the others were presumably aware of their surroundings -- *i.e.*, that the suite shared walls with other hotel rooms occupied by other guests as well as through the open balcony door, that a public hallway abutted the door to the suite, and that the balcony was an open-air space with numerous other balconies in close proximity. Despite this, Lilly and the others made no effort to "exhibit" an expectation of privacy by speaking in a more quiet manner, confining their conversation to inside the suite, or closing an open balcony door. (Exhibit A at 35-44).

The Florida Supreme Court, contrasting the expectation of privacy in a home versus a hotel room, stated presciently: "An individual expects the public to be readily present in the hallways outside a hotel room door, but an individual does not expect the public to be readily present on the porch outside the door to a home." *Rabb*, 920 So.2d at 1186-87. This succinctly undermines Defendant's argument that Lilly had a reasonable expectation of privacy -- unlike in a home, Lilly must be presumed to expect the public to readily present in the areas directly outside the confines of the hotel room. *See id.*

Furthermore, in analogous circumstances concerning the application of privilege under Florida law, "[a]s a general rule, when third party eavesdroppers hear otherwise privileged communications, the communications are not privileged unless the communicating parties had a reasonable expectation of privacy. . . . [A] conversation which is tape recorded or overheard by a

third party is generally not privileged because there is no reasonable expectation of privacy." *Boyd v. State*, 17 So.3d 812, 817-18 (Fla. 4th DCA 2009) (internal quotations and citations omitted). Whether a communication is confidential depends on whether the person invoking the privilege knew or should have known that the privileged conversation was being overheard. *Proffitt v. State*, 315 So.2d 461 (Fla. 1975). In *Mobley v. State*, 409 So.2d 1031 (Fla. 1982), a defendant attempted to argue that conversations with an attorney were privileged despite presence of another inmate in the immediate vicinity; the Florida Supreme Court rejected the argument by noting the absence of evidence that any attempt was made to actually keep the conversation from being overheard. Thus, as here, an opportunity was available to keep the conversations private, but the party attempting to suppress the evidence failed to make the effort at the time and therefore cannot claim a reasonable expectation of privacy now.

Accordingly, the recordings in question were obtained legally under Florida law due to Lilly and the others not having a reasonable expectation of privacy under the circumstances.

**B.**     **Florida Evidentiary Rules Do Not Apply**

A related Florida statute provides that no recorded information "may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter." Fla. Stat. § 934.06. Accordingly, if this case were in Florida state court, Defendant may have an argument that the recordings are inadmissible under this statute. This trial, however, is not scheduled in Florida state court.  However, this case is governed by the Federal Rules of Evidence which do not required exclusion of the tape.

From its text, it is uncertain whether the Florida statutory prohibition on admissibility where less than all parties consent to a recording was designed to apply to evidentiary decisions made by courts in other states and federal jurisdictions. The text of the prohibition refers, in part, to "the state," suggesting it is limited to Florida. Although a phrase not used in the prohibition, the statute elsewhere defines "judge of competent jurisdiction" to mean judicial officers "of any court of record having felony jurisdiction of the State of Florida." Fla. Stat. § 934.02(8).

Perhaps most significantly, although this prohibition has been in place since 1969, no case has found it applies anywhere other than Florida state court. Nor has Defendant shown how, by statute, Florida could direct that certain evidence was inadmissible in federal court proceeding in Texas. This is particularly true given that the rules governing admissibility in federal question matters are the Federal Rules of Evidence. *See Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).

> Federal courts must be able to control the fact-finding processes by which the rights of litigants are determined in order to preserve 'the essential character' of the federal judicial system. Of course, we do not contend that this control will not affect state-created substantive rights in some cases. Ultimately, however, the integrity of our fact-finding processes must outweigh considerations of uniformity (citing cases).

*Boeing Co. v. Shipman*, 411 F.2d 365, 369-70 (5th Cir. 1969). *See also Monarch Ins. Co. of Ohio v. Spach*, 281 F.2d 401 (5th Cir. 1960) (a written statement regarding an accident was held admissible under Rule 43(a) despite failure to furnish a copy on request, which in the Florida courts would have rendered the statement inadmissible).

"In federal question cases, there is the additional factor that federal substantive rights may be compromised if a stringent state rule of evidence is applied." *Garner*, 430 F.2d at 1100. That is the case here where Defendant attempts to questionably impose a stringent Florida statute on this matter, thus interfering with Plaintiff's substantive rights to prosecute this case under federal law.

Accordingly, even if the recordings were deemed in violation of the Florida Statute, this Court is not bound by Florida law concerning admissibility of evidence.

### C.       Protective Order is Inappropriate

Finally, Defendant avers that the Court must enter a protective order under Rule 26(c) because Lilly's comments are irrelevant to the claims at issue and prejudicial to Defendant. As with the above arguments, these assertions have no merit.

First, as a matter of law, Defendant's motion seeks relief under Rule 26(c), which specifically concerns discovery, not admissibility of evidence. Nowhere in Rule 26(c) is there a legal basis for the Court to restrict information that may be submitted into evidence, either before a jury or in summary judgment. Rule 26(c)(1) states, in full, that:

> *A party or any person from whom discovery is sought may move for a protective order* in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the *disclosure or discovery*;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the *disclosure or discovery*;
>
> (C) prescribing a discovery method other than the one selected by the party seeking *discovery*;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of *disclosure or discovery* to certain matters;
>
> (E) designating the persons who may be present while the *discovery* is conducted;
>
> (F) requiring that a *deposition* be sealed and opened only on court order;
>
> (G) requiring that a *trade secret or other confidential research, development, or commercial information* not be revealed or be revealed only in a specified way; and

(H) requiring that the parties *simultaneously file specified documents or information in sealed envelopes*, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1) (emphasis supplied).

The present motion does not concern discovery -- the recording is already available to the parties and was obtained from a third party witness pursuant to a subpoena duces tecum. Nowhere in Rule 26(c)(1) is a Court empowered to restrict or limit the use of materials at trial or in motion practice, or, as Defendant requests here, to wholly prohibit a party from using evidence at all in litigation (ECF No. 28 at 3). As stated above, the proper motion Defendant would need to file for such relief would be a motion in limine, which has a wholly different set of legal standards; such relief has not been sought here. Thus, in light of Defendant's wholesale failure to seek the relief under the proper legal bases, the motion must be denied.

However, if the Court were to consider the merits of the arguments under Rule 26(c)(1) and saw fit to grant *discovery* relief (though, it is unclear what discovery relief could actually be granted in this matter), the motion should still be denied for being without merit, even under the incorrect legal standard it cites.

### 1.    Relevance

Defendant claims that the recordings can only be deemed relevant if they meet the standards set forth in the so-called "stray remarks" doctrine. (ECF No. 28 at 6). This is a legally dubious argument. And even if the doctrine were applicable, the requirements are satisfied under the present circumstances.

 The stray remarks doctrine applies to determining whether the remarks at issue provide sufficient direct evidence of discrimination, which would be sufficient to support a claim for illegal discrimination without applying the burden shifting framework of *McDonald Douglas*. *Krystek v.*

*University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999).  Lilly's comments arguably constitute direct evidence of sex discrimination, and, thus, the stray remark doctrine does not apply. (App. 1-29, 49, 50).

Moreover, even if Lilly's comments were not direct evidence of sex discrimination, Lilly's comments could also constitute circumstantial evidence of illegal discrimination that could defeat a motion for summary judgment upon a showing that the sexist comments demonstrate a discriminatory animus and such comments were made by a person who made the employment decision at issue or exerted leverage or influence over the decision. *Goudeau v. National Oilwell Varco, L.P.,* 793 F.3rd 470, 475-76 (5th Cir. 2015)(holding discriminatory comments were circumstantial evidence requiring reversal of summary judgment); *Rachid v. Jack-In-The-Box, Inc.*, 376 F.3d. 305, 313 (5th Cir. 2004); *see also Alviar v. Macy's Inc.*, __ Fed Appx. __ , 2019 WL 3849310 *6 (5th Cir. 2019).  Lilly's sexist comments easily meet this standard. (App. 1-29, 49, 50). Thus, Lilly's sexist comments are relevant, admissible evidence.

The stray remarks doctrine does not concern the issue of relevance as defined under Rule 26, which sets a much lower bar, nor does it concern *admissibility* of evidence. Under Rule 26(c)(1), the burden on the party resisting discovery -- in order to prevail on a motion for protective order -- is to specifically object and show that the requested discovery does not fall within the Rule 26(b)(1) scope of relevance or that a discovery request would impose an undue burden or expense or is otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *Heller v. City of Dallas*, 303 F.R.D. 466, 483–93 (N.D. Tex. 2014). Defendant's "stray remarks" based arguments does neither.

Rule 26(b)(1) provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable.*" Fed. R. Civ. P. 26(b)(1) (emphasis supplied). Reinforcing the legally dubious nature of Defendant's motion -- which seeks an order deeming certain evidence inadmissible throughout these proceedings -- is the fact that Rule 26(b)(1) defines relevant evidence *as not necessarily admissible. Id.*

As Plaintiff avers that she faced ongoing discrimination during her employment on the basis of her gender, derogatory commentary about Plaintiff and other female employees by the individual who claimed to have Plaintiff fired is highly relevant to resolving the issues in this matter. Accordingly, under Rules 26(b)(1) and 26(c)(1), the evidence at issue is relevant and should not be excluded (if Rule 26(c)(1) provided any grounds for the exclusion of evidence).

Even if the doctrine did apply to this matter and the remarks could only be presented as substantive evidence under the doctrine, the conversations at issue clearly meet that criteria, contrary to Defendant's strained arguments.

"[F]or comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Krystek*, 164 F.3d at 256 (alteration in original) (quoting *Brown*, 82 F.3d at 655). Where "[c]omments [ ] are vague and remote in time [they] are insufficient to establish discrimination. In contrast, specific

14

comments made over a lengthy period of time are sufficient." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996) (internal quotations and citations omitted); *see Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304 (5th Cir. 2000) ("In order for a[ ] [protected class-]based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [the employee's protected class] was a determinative factor in the decision to terminate the employee.").

Plaintiff is a protected class of person (female) and the commentary was specifically derogatory to women (and to Plaintiff in particular). The comment was made within weeks of Plaintiff's termination, which is sufficiently proximate to satisfy this doctrine, as matters deemed outside the proximate time frame are typically a matter of years, not weeks. *See, e.g., Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (holding that a comment made nearly a year before the adverse employment decision that appeared unrelated to the decision was a stray remark); *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 344 (5th Cir. 2002) (holding that a comment made two or more years before the employment decision at issue, that was unrelated to the decision, was not evidence of discrimination). Lilly was a senior vice president of sales for Defendant, a position senior to Plaintiff, and he explicitly averred in the conversations at issue that he did have authority to put Plaintiff's termination in motion. Accordingly, as far as relevance is concerned, the recordings establish a basis for believing that the author of the remarks had authority over the employment decision. And, finally, Lilly's comments directly relate to the employment decision at issue, as the remarks specifically claim that he played a role in causing the termination.

Accordingly, even if the Court were to address the merits of Defendant's legally baseless motion, the recordings at issue are relevant to the substantive issues in this case.

15

### 2.      *Prejudice*

To be sure, Lilly's comments are significantly prejudicial to Defendant's case. However, that Defendant's substantive defenses will be damaged by relevant, admissible evidence does not make Lilly's comments unfairly prejudicial within the meaning of Rule 26.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 403, however, provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Fed. R. Evid. 403. In *United States v. Pace*, 10 F.3d 1106, 1115–16 (5th Cir. 1993), the Fifth Circuit explained, however, that "[u]nless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id.*

So, if this Court were addressing Defendant's motion under the proper rules of law (i.e., the Federal Rules of Evidence), the recordings are highly relevant to case for discrimination and do not, in any way, represent evidence "of scant or cumulative probative force[.]" *Id.*

Thus, Defendant cannot show "unfair prejudice" in any appropriate sense.

## V.      CONCLUSION

Because Lilly's sexist comments are relevant, Lilly does not remember what he said and the Florida law is inapplicable, Defendant's motion is without basis in law and in fact, and therefore, must be denied.

Respectfully submitted,

/s/ JASON C.N. SMITH
JASON C.N. SMITH
State Bar No.   00784999

LAW OFFICES OF JASON SMITH
600 Eighth Avenue
Fort Worth, Texas 76104
Telecopier: (817) 334-0880
Telephone: (817) 334-0898
E-mail: jasons@letsgotocourt.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2019, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court and in accordance with the Federal Rules of Civil Procedure.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Harold D. Jones.

/s/ JASON C.N. SMITH
JASON C. N. SMITH